UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BURCH,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF MOTOR VEHICLES and DOES 1-10, inclusive,,<br><br>    Defendants. | No.  CIV. S-13-1283 LKK/DAD<br><br>**ORDER** |

   This is an employment discrimination case.  Plaintiff claims racial discrimination and retaliation under Title VII and California law, as well as discrimination and retaliation based upon disability under state law.  In brief, the Complaint alleges that after plaintiff filed a racial discrimination complaint with the California Department of Fair Employment and Housing ("DFEH") in 2003, he was subjected to a hostile work environment from that time until June 24, 2011.  He also alleges that he was constructively discharged in 2012 when his request for accommodation of his disability was denied.

////

**I. ALLEGATIONS**

Plaintiff Brian Burch is an African-American man who was employed by the California Department of Motor Vehicles ("DMV") from April 16, 2001 until January 12, 2012. First Amended Complaint ("Complaint") (ECF No. 19) ¶¶ 5-6 & 52.[1] Plaintiff was initially hired as a "Staff Information Systems Analyst" in the Executive Division of DMV. Id., ¶ 7. He was assigned to manage Information Technology ("IT") projects and to work with outside vendors. Id. Plaintiff was the only African-American man in the Executive Division. Id.

The trouble started in "early 2003," when plaintiff filed a racial discrimination complaint with DFEH. Id., ¶¶ 10 & 12.[2] Afterward, DMV created a hostile work environment for plaintiff, which continued until June 24, 2011. Plaintiff asserts that all the adverse employment actions taken against him during that time were taken because of his race, or as retaliation for his complaining about racial discrimination. See id., ¶¶ 56, 63, 76 & 83.

In 2003, plaintiff was "involuntarily assigned" to be a "Personal Computer Executive Administrator," id., ¶ 9, and denied a "Merit Salary Adjustment," id., ¶ 10. In 2004, plaintiff was again denied a "Merit Salary Adjustment." Id., ¶ 11. On October 1, 2004, he was demoted to "Staff Service Manager I," and placed on a one-year probation. Id. ¶¶ 17. During the probationary period, DMV piled a disproportionate amount of work on plaintiff,

---

[1] Plaintiff alleges both that he "is" a DMV employee (Complaint ¶ 5), and that he was "constructively discharged." Id. ¶ 52.

[2] The Complaint makes no further mention of this DFEH complaint.

1   while withdrawing support and resources from him, in such a
2   manner as to ensure that plaintiff would fail.  Id., ¶ 21.
3       On October 27, 2005, DMV rejected plaintiff's probation,
4   after giving him an "unsatisfactory" performance report.  Id.,
5   ¶¶ 18-22.  As a consequence, on November 10, 2005, plaintiff was
6   moved into the basement, and involuntarily made a "Personal
7   Computer Coordinator."  Id., ¶ 23.  In February 2006, DMV agreed
8   to withdraw the probation rejection, and to return plaintiff to
9   the Executive Division.  Id., ¶ 25.  However, he was not returned
10  to the Executive Division at that time.  Id., ¶ 26.
11      From the Complaint, it appears that no discrete adverse
12  employment actions were taken against plaintiff in 2007 and
13  2008.³  On June 13, 2008, DMV formally withdrew the probation
14  rejection, and returned plaintiff to the Executive Division.
15  Id., ¶ 25.
16      Starting in October 2009, after plaintiff passed several
17  specialist exams, DMV denied him a "promotion in place," even
18  while granting such promotions to others who were similarly
19  situated.  Id., ¶ 30-32.
20      In 2010 plaintiff was unable to get another job at DMV or
21  elsewhere because of errors and discrepancies in his personnel
22  file.  Id., ¶¶ 33-39.  On August 13, 2010, DMV placed plaintiff
23  under suspicion for a computer breach that plaintiff himself had
24  reported a few days earlier.  Id., ¶¶ 40-41.  Plaintiff suffered

---

³ In 2007, plaintiff was moved to the "System Test" unit, where he was the only African-American man in the unit.  Id., ¶ 28-29.  In addition, plaintiff's position designations "were changed several times without his knowledge."  Complaint ¶ 28.  However, the Complaint does not allege, nor is there a reasonable inference, that these were adverse employment actions or that they contributed to the hostile work environment.

1  adverse employment actions as a result of the accusation, which
2  continued until June 24, 2011, when he was finally told that he
3  had been exonerated back on September 14, 2010.  Id., ¶¶ 42 & 43.
4  This appears to be the end of the allegations of racial
5  discrimination and retaliation.  The conduct after this date
6  appears to relate only to plaintiff's claim that he was
7  discriminated against because of a disability.

8      On June 24, 2011, plaintiff attended a meeting at which he
9  was advised that he had been exonerated in the computer breach
10 matter back in September 2010.  The meeting somehow caused
11 plaintiff to be "placed off work for two weeks by his doctor."
12 Id., ¶ 44.

13     Plaintiff returned to work in July 2011 with a doctor's
14 restriction "that he was not to work under Casey Evan."  Id.,
15 ¶ 46.[4]  Plaintiff requested a reasonable accommodation and, after
16 taking more time off, apparently for medical reasons, his request
17 was denied on September 14, 2011.  Id., ¶¶ 48-50.

18     Plaintiff filed his complaints with the EEOC and DFEH on
19 December 6, 2011.  He returned to work on January 11, 2012, only
20 to be "subjected to hostile interrogation by his new manager,"
21 and again denied reasonable accommodation.  Id., ¶ 51.  Plaintiff
22 was constructively discharged on January 12, 2012 because DMV
23 would not accommodate his disability.  Id., ¶ 52.

24     Plaintiff received his right-to-sue letter from DFEH on
25 November 5, 2012, and from the EEOC on April 3, 2013.  He filed
26 this lawsuit on June 26, 2013.  Id., ¶¶ 54 & 55.  Plaintiff filed

---

[4] This is the paragraph mis-numbered "47," appearing at ECF No. 19 lines 21-23.

1  the First Amended Complaint on September 18, 2013.  ECF No. 19.

2  DMV moves to dismiss the complaint in its entirety for
3  failure to exhaust administrative remedies and failure to state a
4  claim.  Further, DMV moves to strike the request for injunctive
5  relief, and to strike all allegations that involve conduct
6  outside the limitations period.

## II. STANDARDS

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Moreover, this court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).[5]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements

---

[5] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 679. Iqbal and Twombly therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[6] A complaint may fail to show a right to relief either

---

[6] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), cert. denied, 132 S. Ct. 2101

by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS – MOTION TO DISMISS

**A. Title VII – Racial Discrimination.**

**1. Hostile work environment.**

> When the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations omitted) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)).

To demonstrate that an actionable hostile work environment exists, "the plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1034 (9th Cir. 2005). To assess objective hostility, the court must look to "all the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Clark Cty. Sch. Dist. v. Breeden, 532

---

(2012).  See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

7

U.S. 268, 270-71 (2001)).

Finally, a hostile work environment can form the basis for a retaliation claim only if the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) (quoting Harris, 510 U.S. at 21).[7]

Defendant argues that anything it did to plaintiff before February 9, 2011 – 300 days before plaintiff filed his complaint with the EEOC and DFEH – is not actionable. See 42 U.S.C. § 2000e-5(e)(1) (must file with EEOC within 300 days of the discriminatory practice if plaintiff has first filed with state agency). Defendant cites National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), for the proposition that each discrete discriminatory or retaliatory action occurs on the day it happened, and may not be linked together to create a "continuing violation."

However, it is the second half of Morgan that addresses the claim that plaintiff makes here, namely, hostile work environment. In such cases, all discriminatory or retaliatory conduct that is a part of the hostile work environment is

---

[7] Since the parties have not addressed the issue, the court will assume that the types of conduct plaintiff alleges are cognizable as hostile work environment. But see Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003) (one element of a hostile work environment claim is that plaintiff "was subjected to verbal or physical conduct of a racial … nature"). It certainly would appear that subjecting plaintiff to humiliating treatment because of his race, such as a humiliating demotion, giving him make-shift furniture, moving him around from location to location and the like, would qualify as the type of humiliating treatment that is actionable under a hostile work environment theory. See Pennsylvania State Police v. Suders, 542 U.S. 129, 134 (2004) (indicating that a "humiliating demotion" or "extreme cut in pay" could be part of a hostile work environment claim in which the plaintiff was constructively discharged).

8

included for liability purposes, so long as the last act occurs within the limitations period:

> It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Morgan, 536 U.S. at 117. Plaintiff alleges that racially discriminatory or retaliatory acts continued until June 24, 2011. Specifically, up until that date, plaintiff was moved from work location to work location, denied work assignments, given make-shift work stations, denied raises, excluded from strategic meetings, worked under the cloud of a computer-hacking investigation, and was denied needed software. See Complaint ¶ 42.

The alleged discriminatory or retaliatory conduct occurring outside the limitations period therefore will not be excluded, as it falls within the claim for hostile work environment.

**2. Protected class.**

Defendant argues that plaintiff, an African-American man, is not a member of a protected class. Defendant is assuming that the only actionable conduct is plaintiff's constructive discharge, which allegedly occurred because DMV refused to accommodate plaintiff, not because of his race. Motion at 13.

However, DMV ignores the rest of the complaint, which alleges that all the discriminatory and retaliatory conduct from 2003 until June 24, 2011 occurred because of his race. Race is a protected category. See McDonnell Douglas Corp. v. Green, 411

9

U.S. 792, 801 (1973) (membership in a "racial minority" is the first element of a prima facie showing of discrimination under Title VII).

The court rejects this argument, as plaintiff, an African-American man, is a member of a protected class under Title VII.

### 3. Prima facie case under McDonnell Douglas.

Defendant argues that the Complaint should be dismissed because it fails to allege the prima facie case required by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The argument is frivolous in light of Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002), which defendants do not cite, but which specifically holds that such allegations are not required:

> This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). We hold that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. P. 8(a)(2).

Swierkiewicz, 534 U.S. at 508. Lest the point be missed, the Court repeated, "we hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination." Id., at 515. Rather, applying the relevant standard, a Title VII complaint "easily satisfies the requirements of Rule 8(a)" where "it gives respondent fair notice of the basis for petitioner's claims." Specifically in that case,

> Petitioner alleged that he had been terminated on account of his national origin

> in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. In addition, they state claims upon which relief could be granted under Title VII and the ADEA.

Swierkiewicz, 534 U.S. at 514 (record citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).[8]

Another reason for this result, other than the liberal pleading requirement, is that McDonnell Douglas does not describe the only route to Title VII liability. Specifically, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz, 534 U.S. at 511 (emphasis added).

Plaintiff's complaint easily meets the Rule 8 standard for notice pleading.[9] However, even on its own terms, defendant's argument fails, as plaintiff has alleged everything that defendant asserts is missing, as discussed below.

**a. Competent performance of duties by plaintiff.**

Defendant argues that plaintiff has not cited enough facts to establish that he was competently performing his job. That is not correct, as plaintiff alleges that "[a]t all times herein

---

[8] See also, Morgan v. Napolitano, 2011 WL 2462968 at *11 (E.D. Cal. 2011) (Karlton, J.) ("In employment discrimination cases, 'under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case ...' under the McDonnell Douglas framework. Twombly explicitly did not overturn this holding").

[9] Defendant does not cite Swierkiewicz, and all of its Title VII cases on this point (all from the Third, Fourth and Sixth Circuits), precede Swierkiewicz.

11

alleged Plaintiff performed his duties competently." Complaint ¶ 57.

### b. Adverse employment actions.

Defendant argues that there are no allegations of adverse employment actions within 300 days of December 7, 20112. That is not correct. Plaintiff alleges discriminatory conduct that occurs up until June 24, 2011. Specifically, as noted above, plaintiff was moved from work location to work location, denied work assignments, given make-shift work stations, denied raises, excluded from strategic meetings, worked under the cloud of a computer-hacking investigation, and was denied software he needed to do his job. See Complaint ¶ 42.

### c. Discriminatory motive.

Defendant argues that plaintiff fails to "allege facts sufficient to 'plausibly suggest (defendant's) discriminatory state of mind.'" ECF No. 21-1 at 14, quoting and relying upon Iqbal, 556 U.S. at 683. Plaintiff has alleged that he was an African-American man and that the hostile work environment he endured, and the adverse employment actions he suffered, occurred because of his race. That it enough to put defendant on notice of plaintiff's claim.

### B. Title VII – Retaliation.

The Complaint alleges that plaintiff's filing of a racial discrimination complaint with DFEH in 2003 caused DMV to create a hostile work environment that lasted until June 24, 2011. As set forth above, plaintiff describes the adverse employment decisions that were taken against him during that period, and he alleges

12

that they were taken in retaliation for his protected activity.[10]

Defendant moves to dismiss, once again arguing that the Complaint fails to allege a prima facie case, and citing cases decided on summary judgment or after trial. Even assuming that Swierkiewicz somehow does not apply to retaliation claims, the Complaint in fact alleges everything defendant says is missing.[11]

> Under Title VII, a plaintiff may establish a prima facie case of retaliation by showing that (1) she engaged in activity protected under Title VII, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action.

Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000) (appeal from a jury verdict).

Plaintiff has alleged each element. He engaged in protected activity in 2003 by filing a racial discrimination complaint with DFEH. DMV subjected him to a hostile work environment, as discussed above. Finally, plaintiff alleges that the hostile work environment was created in retaliation for his filing the DFEH complaint in 2003.

Defendant argues that the DFEH filing is too distant in time for there to be a causal link. That is because defendant is once again viewing the Complaint as one for discrete acts of discrimination or retaliation. In fact, the Complaint is for

---

[10] At trial, plaintiff will have the burden of proving that "the desire to retaliate [for protected activity] was the but-for cause of the challenged employment action." University of Texas Southwestern Medical Center v. Nassar, 570 U.S. ___, 133 S. Ct. 2517, 2528 (2013).

[11] However, the reasoning of Swierkiewicz "applies to any claim to which the McDonnell Douglas framework is applicable." Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004) (involving an employment discrimination claim under 42 U.S.C. § 1981).

13

1  hostile work environment, which was created immediately after the
2  filing of the complaint, not years later.[12]
3       The remainder of defendant's motion is a quibble over
4  whether the adverse employment actions were adverse enough.  They
5  were.  Plaintiff asserts that among the retaliatory acts were
6  demotion, flunking probation, having resources taken away so that
7  he could not work, and isolating him from other workers.  This is
8  sufficient.  See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028,
9  1061 (2005) (alleging a retaliatory course of conduct is
10 sufficient to allege adverse employment action, even if no
11 individual action would suffice).  In Yanowitz, the individual
12 acts of retaliation were arguably not as severe as those alleged
13 here, yet they were sufficient, if true, to avoid summary
14 judgment.

15      **C. State Claim: Disability Discrimination.**

16      California bars employment discrimination based upon
17 disability, and bars retaliation for complaining about such
18 discrimination.  Cal. Govt. Code § 12940(a) & (h); Colmenares v.
19 Braemar Country Club, Inc., 29 Cal. 4th 1019, 1022 (2003) ("The
20 Fair Employment and Housing Act (FEHA) prohibits employment
21 discrimination based on a physical disability").[13]  Although the
22 Complaint is extremely thin on this claim, it is sufficient to

---

[12] Defendant repeats all the same arguments for the parallel claims under California law.  They are also rejected.  Federal pleading rules govern here. Aguilar v. Corral, 2007 WL 2947557 at *3 (E.D. Cal. 2007) (Karlton, J.) (regarding pleading requirements, "this court applies federal procedural law to even state law claims").  Plaintiff's allegations are sufficient to state a claim for employment discrimination and retaliation and under state law.

[13] Colmenares addressed physical disability, but the FEHA defines both mental disability and physical disability as a condition "that limits a major life activity."  Cal. Govt. Code § 12926(j)(1) & (*l*)(1)(B).

14

withstand defendant's dismissal motion.  Plaintiff asserts that he filed a Workmen's Compensation claim based upon stress, from which the court can infer that his disability was stress. However, the Complaint also indicates that the only accommodation needed was to not work under a particular supervisor, or a particular chain of command.

Defendant's principal argument here is that plaintiff has not sufficiently alleged that he has a "disability," because he has not alleged that he has a condition precluding him from working "a class of jobs," and that not being able to work for a particular supervisor is not a disability.  ECF No. 21-1 at 18. Defendant relies upon Real v. City of Compton, 73 Cal. App. 4th 1407, 1419 (2nd Dist. 1999), and Hobson v. Raychem Corp., 73 Cal. App. 4th 614, 628 (1st Dist. 1999) (the "ability to … perform under a particular supervisor, does not constitute a qualified disability"), disapproved by Colmenares, 29 Cal. 4th at 1031 n.6 (disapproving Hobson to the extent it holds or suggests that "the federal law's substantial limitation test applies to claims of physical disability brought under the FEHA").[14]

Defendant misstates the law, and his reliance on Hobson is misplaced.[15]  The notion that plaintiff is only disabled if he is precluded from working "a class of jobs" derives from the mistaken view that a person is disabled under California's FEHA

---

[14] Defendant states that Hobson was overruled by Colmenares "on other grounds." As discussed below, Hobson was overruled by Colmenares on the issue for which defendant cites it – whether plaintiff must be "substantially limited" by his disability, and therefore unable to work in "a class of jobs."

[15] Defendant's reliance on Real is particularly puzzling, since Real was brought under the federal Americans with Disabilities act, and never mentions FEHA.

15

only if his condition "substantially limits" his ability to work. This view was specifically rejected by the California Supreme Court in Colmenares, which held that for a plaintiff to establish disability under the FEHA, he must show that "the disease or condition limited (as opposed to substantially limited, as required under federal law) the plaintiff's ability to participate in major life activities." Colmenares, 29 Cal. 4th at 1031-32 (emphasis added).

In addition to the California Supreme Court's express disapproval of Hobson's reliance on the "substantial limitation" standard, the California legislature has expressly voided the conclusion Hobson and similar cases drew from that standard,[16] namely, that plaintiff therefore had to show that he was unable to work in "a class of jobs."[17] In 2000, the legislature enacted

---

[16] The "class of jobs" conclusion these cases drew derived from language formerly included in federal regulations:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

56 Fed. Reg. 35726 (July 26, 1991) (emphasis added) (former 29 C.F.R. § 1630.2(j)(3)(ii)). That language has since been removed from the regulation, and replaced with language clarifying that under federal law, "substantly limits" is to be interpreted broadly. See 29 C.F.R. § 1630.2(j)(3)(i).

[17] The proposition for which defendant cites Hobson is that "the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability." Hobson, 73 Cal. App. 4th at 628. However, Hobson relies on Thompson v. Holy Family Hosp., 121 F.3d 537 (9th Cir. 1997), for this proposition. Thompson, in turn, relies upon the no

16

an amendment to FEHA which states:

> under the law of this state, "working" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.

Cal. Gov. Code § 12926.1(c).[18]  The court rejects defendant's argument that plaintiff has failed to allege that he has a disability.

### D. State Claim: Failure To Engage in the Interactive Process.

As a separate cause of action, California makes it an unlawful employment practice:

> For an employer … to fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee … with a known physical or mental disability or known medical condition.

Cal. Govt. Code § 12940(n).

Defendant here moves for dismissal solely based upon its assertion that plaintiff has not alleged a disability.  Plaintiff has alleged a disability, as discussed above, so the court rejects this argument.

### E. State Claim: Retaliation for Failure To Accommodate.

The Complaint alleges that DMV retaliated against plaintiff

---

longer extant regulation that interpreted the federal ADA's "substantially limits" language to require that the condition prevent the plaintiff from working in "a class of jobs."  Thompson, 121 F.3d at 540 (citing former 29 C.F.R. § 1630.2(j)(3)(i) (using the "class of jobs" language)).  None of that applies in the FEHA context, and it never did, according to Colmenares.

[18] Federal regulations under the federal Americans with Disabilities Act define "disability" to mean, with respect to an individual, "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual."  29 C.F.R. § 1630.2(g)(1)(i) (emphasis added).

after he requested reasonable accommodation.  Defendant appears to be correct that requesting reasonable accommodation is not the type of protected activity that can lead to a claim of retaliation.  See <u>Kelley v. Corrections Corp. of America</u>, 750 F. Supp. 2d 1132, 1144 (E.D. Cal. 2010) (Ishi, J.).  Plaintiff does not respond to defendant's argument, and the court will accordingly dismiss this part of plaintiff's state retaliation claim.

**F. State Claims: Miscellaneous.**

Claim Four's title asserts that the claim is for employment discrimination under Cal. Govt. Code § 12940(a).  However, the text of the claim asserts only a claim for retaliation, which is also the claim asserted in Claim Five.  The court will therefore dismiss Claim Four with leave to amend, <u>if</u> in fact plaintiff meant to assert a state employment discrimination claim there.

Claim Five includes a reference to Cal. Govt. Code § 12940(i), which is a claim for "aiding and abetting."  Plaintiff concedes that it should not be there.  ECF No. 22 at 1.  The court will accordingly dismiss Claim Five to the degree it asserts any claim under Section 12940(i).

**IV. ANALYSIS – MOTION TO STRIKE**

Defendant moves to strike the request for injunctive relief.  It asserts that injunctive relief is not available under Title VII because plaintiff fails to allege "'the inadequacy of legal remedies,'" quoting <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982).

Defendant has made no showing that the request for injunctive relief – which Title VII specifically provides as a

1   remedy – is "redundant, immaterial, impertinent, or scandalous,"
2   as required by Fed. R. Civ. P. 12(f).  If defendant is correct
3   that plaintiff has not properly alleged elements necessary to
4   obtain such relief, then injunctive relief will not be granted.
5   However, that is not a basis for striking the request from the
6   Complaint.  The remainder of the motion to strike is a re-hash of
7   the motion to dismiss, and is rejected for the reasons given
8   above.

## V. CONCLUSION

10  For the reasons set forth above, the court orders as
11  follows:
12        1.   Defendant's motion to dismiss the First Claim
13  (federal employment discrimination claim) is **DENIED**;
14        2.   Defendant's motion to dismiss the Second Claim
15  (federal anti-retaliation claim) is **DENIED**;
16        3.   Defendant's motion to dismiss the Third Claim
17  (state "disability discrimination and retaliation" and failure to
18  engage in the interactive process) is **GRANTED** to the degree it
19  asserts a state disability claim for retaliation, and is
20  otherwise **DENIED**;
21        4.   Defendant's motion to dismiss the Fourth Claim is
22  **GRANTED** with leave to amend;
23        5.   Defendant's motion to dismiss the Fifth Claim
24  (state anti-retaliation claim) is **GRANTED** to the degree it
25  asserts a claim under Cal. Govt. Code § 12940(i) (aiding and
26  abetting), and is otherwise **DENIED**;
27        6.   Defendant's motion to strike is **DENIED**; and
28        7.   Plaintiff shall file his Second Amended Complaint

to conform to this order within thirty (30) days of the date of this order.  Plaintiff, whom the court notes is represented by counsel, shall ensure that the Second Amended Complaint (1) is free of the grammatical and usage errors that made the original and First Amended Complaints, and his legal memoranda, so difficult to read and understand, and (2) complies with the "short and plain statement" requirements of Fed. R. Civ. P. 8. Failure to comply with this order may result in dismissal of the case, with prejudice, for failure to prosecute.

IT IS SO ORDERED.

DATED:  December 20, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT