UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BURCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT of MOTOR VEHICLES,<br><br>　　　　　Defendant. | No. 2:13-cv-01283-TLN-DB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant California Department of Motor Vehicles' ("Defendant") Motion for Summary Judgement. (ECF No. 69.) Plaintiff Brian Burch ("Plaintiff") opposes Defendant's motion. (ECF No. 71.) Defendant filed a reply. (ECF No. 72.) Having reviewed the filings, and for the reasons set forth below, the Court hereby GRANTS Defendant's Motion for Summary Judgment (ECF No. 69).

**I.　　EVIDENTIARY ISSUES**

The Court notes both parties filed separate statements of undisputed material facts, to which each objected. (ECF Nos. 69-1, 71-1, 71-2, & 72-1.) Plaintiff filed a declaration to which Defendant objects. (ECF Nos. 71-3 & 72-3.) The Court relied on facts from Defendant's Separate Statement of Undisputed Material Facts (ECF No. 69-1) which were undisputed and statements from Plaintiff's declaration (ECF No. 71-3) about which he has personal knowledge.

1

Plaintiff's declaration consists of 103 numbered paragraphs which are not supported by citation to the record. (ECF No. 71-3.) The Court will only rely on information within Plaintiff's personal knowledge or which he offers to show statements were made to him, not to prove the truth of matters asserted in the statements. *Shakur v. Schriro,* 514 F.3d 878, 889 (9th Cir. 2008); *Calmat Co. v. U.S. Dep't of Labor,* 364 F.3d 1117, 1124 (9th Cir. 2004); Fed. R. Civ. P. 56(c)(4).

Plaintiff provides undisputed material facts without citation to the record, except for Fact 35, which contains cites to several numbered paragraphs in Plaintiff's declaration, which themselves do not include citations to the record. (ECF No. 71-1 ¶ 35; ECF No. 71-3 ¶¶ 51–60.) The Court will not search several hundred pages of briefs and supporting materials to determine whether they contain support for the facts Plaintiff asserts and whether those facts would be admissible at trial. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774–75 (9th Cir. 2002).

Defendant's separate statement of undisputed material facts consists of 70 facts with citation to the record. (ECF No. 69-1 at 1–13.) Plaintiff agrees that 56 of those facts are undisputed, but objects to 14 others. (ECF No. 71-2 at 2–16.) Plaintiff labels some facts disputed then cites to the same portion of the record as Defendant without explanation, or asserts a new fact, or attempts to provide context. In those cases, the Court deems the facts undisputed for the purposes of this motion. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); Fed. R. Civ. P. 56(c)(1)(A)–(B), 56(e)(2). Plaintiff raises genuine disputes regarding three of Defendants facts, 35, 44, and 53. (ECF No. 72-1 ¶¶ 35, 44, 53.) The Court deems Facts 35, 44 and 53 disputed for purposes of this motion, though notes neither party relied on these facts.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff asserts claims beginning in 2003, however, the parties signed a Stipulation and Settlement Agreement ("Settlement") in which Plaintiff "waived and released" Defendant from liability for any claim related to Plaintiff's employment before April 30, 2008. (ECF No. 69 at 22; ECF No. 71-4 at 2–4.) *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 460–61 (9th Cir. 1989); *Fair Hous. Council of Cent. California, Inc. v. Tylar Prop. Mgmt. Co.*, 975 F. Supp. 2d 1115, 1122 (E.D. Cal. 2012). Accordingly, the Court will only evaluate claims based on conduct after the settlement date, and this section primarily contains facts following that date.

### A. Plaintiff Begins Working for Defendant

Plaintiff, an African American male, began working for Defendant in 2001. (ECF No. 69-1 ¶¶ 1, 6.) Defendant hired Plaintiff for a position as a Project Management Office ("PMO") Staff Information Systems Analyst ("SISA"). (ECF No. 69-1 ¶ 2.) As a PMO SISA, Plaintiff's duties included assisting in the management of Department IT projects with an emphasis on working with outside vendors. (ECF No. 69-1 ¶ 3.)

### B. Plaintiff's Application for Promotion

In October 2009, Plaintiff completed the Systems Software Specialist Series exams for promotional purposes. (ECF No. 71-3 ¶ 48.) In 2009 or 2010, Plaintiff applied for a promotion to System Software Specialist II ("SSS II") with the DMV and was granted a first-round interview, but he was not selected for the position. (ECF No. 69-1 ¶ 43.) Plaintiff also sought positions with other state agencies, but he did not secure other employment. (ECF No. 71-3 ¶¶ 51, 53, & 54.) During this time, Plaintiff's position numbers changed because the department in which he worked, the Systems Test Unit in the Information Systems Division ("ISD"), was undergoing a reorganization. (ECF No. 69-1 ¶¶ 39, 40.) His classification as a SISA remained constant. (ECF No. 69-1 ¶ 39.) No representative from any state agency reported any work history irregularities to Plaintiff when considering him for a job. (ECF No. 69-1 ¶ 45.)

### C. Security Breach and Investigation

Around August 2010, Plaintiff discovered and accessed a security flaw which allowed him to view employees' personal information such as social security numbers and leave requests. (ECF No. 69-1 ¶ 46.) Plaintiff reported this breach to his supervisor. (ECF No. 69-1 ¶ 47.) Two weeks later, Plaintiff's supervisor informed him that Internal Affairs was investigating, and ISD Desktop Support and Information Protection Office confiscated his computers. (ECF No. 69-1 ¶ 47.) Plaintiff met with Internal Affairs shortly after, although the Investigations Division does not normally communicate with individuals who are under investigation. (ECF No. 69-1 ¶ 48.)

Plaintiff does not think Internal Affairs launched the investigation because of his race, but he does thinks that he was moved to a new cubicle for that reason. (ECF No. 69-1 ¶ 55.) Defendant's standard procedure after a security breach is to remove the computer used to access

the confidential information and to move the employee to a new workspace. (ECF No. 69-1 ¶ 49.) A Desktop Support Team moved Plaintiff to a new cubicle along with an old computer from Plaintiff's prior cubicle. (ECF No. 69-1 ¶ 50.) While Plaintiff had replacement equipment in his new cubicle, Defendant restricted his access to software and the compromised database. (ECF No. 69-1 ¶ 52.) The new cubicle had an existing PC in the center and his replacement PC was placed to the side, which Plaintiff thinks was non-ergonomic. (ECF No. 69-1 ¶ 51.)

Plaintiff thinks he worked under a cloud due to the investigation, although he does not recall hearing anyone speak about it, and to his knowledge his supervisor Casey Evans ("Evans") was the only person aware of it. (ECF No. 69-1 ¶ 58.) Evans gave Plaintiff an assignment to work with the Quality Center Administrator to write a user manual, but Plaintiff did not work on the project because he was "leery" of doing so during the investigation. (ECF No. 69-1 ¶ 54.)

Internal Affairs exonerated Plaintiff in September 2010, but Plaintiff did not learn of his exoneration until June 2011. (ECF No. 69-1 ¶¶ 59–61; 71-3 ¶¶ 65 & 66.) Plaintiff believes he was not informed of the exoneration earlier and an exoneration letter was kept from him because of his race. (ECF No. 69-1 ¶ 60.) The letter exonerating Plaintiff was addressed to a Deputy Director. (ECF No. 69-1 ¶ 61.) Plaintiff never asked the Deputy Director when he had received the letter. (ECF No. 69-1 ¶ 61.) Plaintiff first saw the letter on June 24, 2011. Evans informed Plaintiff of his exoneration and showed Plaintiff the cover page of the letter on June 24, 2011, just after Evans received it. (ECF No. 69-1 ¶ 59; ECF No. 71-3 ¶ 66.)

D. Medical Leave and Request for Accommodation

In June 2011, Plaintiff went on medical leave due to stress. (ECF No. 69-1 ¶ 62.) He returned on July 18, 2011 and went on leave again on July 27, 2011. (ECF No. 71-3 ¶¶ 69, 70.) Plaintiff's psychologist provided a note stating Plaintiff was "restricted from working under [the] current chain of command in [the] Information Systems Division." (ECF No. 69-1 ¶ 63.) Plaintiff includes the Deputy Director and each supervisor in that chain of command. (ECF No. 69-1 ¶ 65.) Plaintiff states Defendant informed him it rejected his request for accommodation, but later re-processed his request with a corrected duty statement. (ECF No. 71-3 ¶¶ 72–76.)

////

4

On December 6, 2011, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and California Department of Fair Employment and Housing ("DFEH"). (ECF No. 71-3 ¶ 77.) Plaintiff states he returned to work on January 11, 2012, but went on leave again the next day when given a choice of being "written-up" for not having his resume available or working under an IDS supervisor. (ECF No. 69-1 ¶ 64; ECF No. 71-3 ¶¶ 78–79.) Defendant received a worker's compensation Panel Qualified Medical Evaluator report and accepted Plaintiff's reasonable accommodation request in March 2012. (ECF No. 69-1 ¶ 66.)

Between 2012 and 2014, Defendant made at least 14 job offers to Plaintiff, and Plaintiff accepted the final offer. (ECF No. 69-1 ¶ 68; ECF No. 71-3 ¶¶ 84–101.) Plaintiff states he was released back to work by his doctor in May 2013. (*See* ECF No. 71-3 ¶¶ 85, 86.) On four occasions in 2014, the Reasonable Accommodations Program in the DMV's Health Management Unit ("HMU") requested Plaintiff provide an updated resume to help the search for a position he would find suitable. (ECF No. 69-1 ¶ 67.) In November 2014, Plaintiff accepted a SISA position in the Enterprise Risk Management Division, started in the role in January 2015, and remains in that job as of the time the parties filed their briefs in this motion. (ECF No. 69-1 ¶ 69; ECF No. 71-3 ¶ 101.) Plaintiff believes Defendant had several suitable jobs available which Defendant did not offer Plaintiff. (ECF No. 71-3 ¶ 102.)

Plaintiff asserts state law claims for disability discrimination and retaliation, race based discrimination, and retaliation, and federal claims for race based discrimination and retaliation. (ECF No. 28.) Defendant moves for summary judgment as to all claims. (ECF No. 69.)

### III.　STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### IV. ANALYSIS

Plaintiff asserts state law claims for (i) disability discrimination and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), (ii) race based discrimination in violation of FEHA, and (iii) retaliation in violation of FEHA, and federal claims for (iv) race based discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and (v) retaliation in violation of Title VII. (ECF No. 28 at 8–12.) Defendant moves for summary judgment on all claims, arguing that there are no genuine issues of material fact. (ECF No. 69 at 1–2.) The Court will address each claim in turn.

The Court notes Defendant's argument that Plaintiff "implicitly acquiesces to Defendant's substantive legal arguments" by not addressing some arguments thoroughly or at all. (ECF No. 72 at 2.) A district court may not grant summary judgment by default, even when the opposing party fails to oppose the motion. *Fetter v. Placer Cty. Sheriff*, 2017 WL 896275, at *3 (E.D. Cal. Mar. 6, 2017) (citing *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 n.4 (9th Cir. 1994)). A court must assess whether the movant's papers are sufficient. *Id.* (citing *United States v. Real Prop. at Incline Vill.*, 47 F.3d 1511, 1520 (9th Cir. 1995), *rev'd on other grounds*, 517 U.S. 820 (1996).

A. <u>Disability Discrimination and Retaliation Claim Pursuant to FEHA.</u>

Plaintiff alleges he is disabled and Defendant discriminated against him by failing to reasonably accommodate him and by not engaging in an interactive process in violation of FEHA. (ECF No. 28 ¶¶ 75–77; ECF No. 71 at 18–20.) The undisputed facts show Plaintiff does not have a FEHA-recognized disability and Defendant is entitled to summary judgment on this claim.

*i.     Plaintiff's disability discrimination claim fails.*

FEHA prohibits an employer from discriminating against an employee because of the employee's mental disability. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (citing CAL. GOV'T CODE § 12940(a)). A plaintiff asserting a claim for mental disability discrimination under FEHA must show (1) he suffers from a FEHA-recognized mental disability; (2) he is otherwise qualified to do the essential duties of his job with or without accommodation; and, (3) he was subjected to adverse employment action because of his disability. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *Faust v. Cal. Portland Cement Co.,* 150 Cal. App. 4th 864, 886 (2007)).

Plaintiff asserts that he has a mental disability because he cannot work under the supervision of anyone in the ISD chain of command due to the anxiety and stress that causes Plaintiff. (ECF No. at 28 ¶¶ 47, 49, 51; ECF No. 69-1 ¶ 65; ECF No. 71-3 ¶¶ 69, 71.) Plaintiff states this includes the Deputy Director of ISD and each supervisor. (ECF No. 69-1 ¶ 65.)

"An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA." *Higgins-Williams v. Sutter Med. Found.*, 237 Cal. App. 4th 78, 84 (2015) (citing *Hobson v. Raychem Corp.* 73 Cal. App. 4th 614, 628 (1999) (holding "the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability" under FEHA)).

California courts have determined that this type of claim, colloquially referred to as a "boss-ectomy," is not a FEHA-recognized mental disability. *Higgins-Williams*, 237 Cal. App. 4th at 85. Plaintiff cannot establish a required element of a disability discrimination case.

*ii.     Plaintiff's disability retaliation claim fails.*

Plaintiff also asserts a claim for disability retaliation in violation of FEHA § 12940 alleging Defendant failed to engage in a good faith, interactive process to make reasonable accommodation for Plaintiff's mental disability. (ECF No. 28 ¶ 77; ECF No. 71 at 19–20.)

To establish a claim for retaliation under § 12940, "a plaintiff must show (1) he engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment

8

action, and (3) a causal link existed between the protected activity and the employer's action." *Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 244 (2016).

In August 2011, Plaintiff requested reasonable accommodation for the mental disability from which he said he suffered. (ECF No. 71-3 ¶ 71.) At the time, however, a request for accommodation did not constitute protected activity. *Moore*, 248 Cal. App. 4th at 245 (citing *Rope v. Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 652 (2013) (determining there was "no support in the regulations or case law for the proposition that a mere request—or even repeated requests—for an accommodation, without more, constitutes a protected activity sufficient to support a claim for retaliation in violation of FEHA.")).

The California Legislature later amended §§ 12940(l)(4) and 12940(m)(2) "to provide protection against retaliation when an individual makes a request for reasonable accommodation under these sections, regardless of whether the request was granted." *Moore*, 248 Cal. App. 4th at 245 (citing Assem. Bill 987, § 1, subd. (d)). The *Moore* court found the amendments changed the law, adding protections for those requesting reasonable accommodation after the amendments' January 1, 2016, effective date. *Id.* at 247. Plaintiff cannot show he engaged in a protected activity, an element of retaliation, when he requested reasonable accommodation in 2011.

Accordingly, Defendant's motion for summary judgment on Plaintiff's disability discrimination and retaliation claim under FEHA is GRANTED.

B. Title VII and FEHA Race Based Employment Discrimination Claims

Plaintiff asserts claims for race based discrimination in violation of Title VII and FEHA. (ECF No. 28 ¶¶ 62–68, 82–87.) As discussed above, Plaintiff released Defendant from liability for events related to Plaintiff's employment through April 30, 2008. Plaintiff's factual allegations after that date relate to (i) his applications for promotion within DMV, (ii) his applications for positions with other agencies, (iii) the security breach he reported and subsequent investigation, (iv) the timeliness with which Defendant informed him of his exoneration, and (v) constructive discharge. (ECF No. 28 ¶¶ 31–61.)

Plaintiff's claims fail because he has not shown Defendant treated him differently than it treated similarly situated employees of different races, a required element for a disparate

treatment claim. *Pinder v. Emp't Dev. Dep't.*, 227 F. Supp. 3d 1123, 1136 (E.D. Cal. 2017) (stating that "[a] plaintiff bringing a Title VII or FEHA racial discrimination action under a theory of disparate treatment must demonstrate at trial that his or her employer took one or more adverse employment actions against the plaintiff because of the plaintiff's race") (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93, 99–100 (2003); *Heard v. Lockheed Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1748 (1996)).

      *i.* *Title VII and FEHA Employment Discrimination Standard of Law*

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Because the objectives of and public policy purposes of Title VII and FEHA are identical, "courts frequently seek guidance from Title VII decisions when interpreting the FEHA." *Lyle v. Warner Bros. Television Prod.,* 38 Cal. 4th 264, 278 (2006). "California courts apply the Title VII framework to claims brought under FEHA." *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (citing *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 354 (2000)).

A plaintiff can show disparate treatment under Title VII by offering proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

      *ii.* *The Court need not address the first three required elements.*

The parties have not disputed that Plaintiff, an African American, is a member of a protected class. They have also not disputed that during the relevant time period, from April 30, 2008 on, he performed most job functions satisfactorily. Defendant does argue that Plaintiff did not suffer any adverse employment actions and that Defendant did accommodate him. Plaintiff, however, fails to meet the fourth element, showing Defendant treated him differently than

10

similarly situated employees not in Plaintiff's protected class, as required for a race based disparate treatment claim under Title VII or FEHA. The Court is able to decide this matter based on Plaintiff's failure to meet that fourth element, so it need not discuss the first three elements.

         *iii.*  *Plaintiff has not shown Defendant treated Plaintiff disparately.*

  Plaintiff asserts he suffered several adverse employment actions, (i) refusal to promote within DMV, (ii) Plaintiff's applications for positions with other agencies, (iii) the security breach he reported and subsequent investigation, (iv) the timeliness with which Defendant informed him of his exoneration, and (v) constructive discharge. (ECF No. 28 ¶¶ 32–58.) He does not allege Defendant treated him differently than other employees in relation to these actions.

  Plaintiff does not allege that Defendant filled the promotion position or senior DMV positions with someone who was not a member of the same protected class, or continued to consider other applicants with comparable qualifications after rejecting Plaintiff. (ECF Nos. 28 & 71.) *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). Plaintiff attributes his inability to find another position to changes in his position numbers in his electronic work history. (ECF No. 28 ¶¶ 30, 36, 37, 42.) Plaintiff states, however, that his position numbers changed because the Systems Test Unit was undergoing a reorganization, and he does not allege that Defendant treated any other employees differently. (ECF No. 69-1 ¶¶ 39, 40.) Similarly, Plaintiff raises a number of concerns regarding Defendant's conduct during the investigation of the security breach and Plaintiff's exoneration. (ECF No. 28 ¶¶ 45, 46; ECF No. 69-1 ¶¶ 51, 54, 55, 58, 64; ECF No. 71 at 14.) Plaintiff again does not allege a single instance in which Defendant treated him differently than any other similarly situated employee.

  Plaintiff also asserts Defendant discriminated against him by constructively discharging him by refusing to provide reasonable accommodation for his disability. (ECF No. 28 ¶ 58.) Plaintiff has not alleged that he resigned, a required element for constructive discharge, and has not alleged that Defendant treated him differently than other employees in relation to his request for accommodation. *King v. AC & R Advert.*, 65 F.3d 764, 767 (9th Cir. 1995) (citing *Turner v. Anheuser–Busch, Inc.,* 7 Cal. 4th 1238, 1251 (1994)); *Levy v. Cty. of Alpine*, No. 2:13-CV-02643-KJM-CKD, 2016 WL 916251, at *8 (E.D. Cal. Mar. 10, 2016).

Plaintiff has not shown Defendant treated him differently from similarly situated employees in relation to any challenged actions and cannot meet the fourth element required for a race based disparate treatment claim. There are, therefore, no genuine issues of material fact as to Plaintiff's employment discrimination claims. Accordingly, Defendant's motion for summary judgment on Plaintiff's employment discrimination claims under Title VII and FEHA is GRANTED.

### C. Title VII and FEHA Retaliation Claims

Plaintiff asserts Defendant retaliated against him in violation of Title VII and FEHA for filing a discrimination complaint against Defendant. (ECF No. 28 ¶¶ 69–74, 88–94.) Plaintiff filed a discrimination complaint with DFEH in 2003 and later filed discrimination complaints with EEOC and DFEH on December 6, 2011, amended on April 25, 2013. (ECF No. 28 ¶¶ 12, 59.) Plaintiff does not specify whether he believes Defendant retaliated against him for filing the 2003 or 2011 filings, but he refers to both at different points in his opposition. (ECF No. 71 at 14, 18.) Plaintiff's claims fail because he has not shown that he suffered an adverse employment action related to his 2003 or 2011 complaints under either the Title VII or FEHA standard.

A plaintiff asserting a claim for retaliation must show (1) that he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Cornwell*, 439 F.3d at 1034–35 (citing *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir. 1994)).

Filing a discrimination complaint is a protected activity under FEHA and Title VII. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1035 (2005); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Under Title VII, an adverse employment action might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006). Under FEHA, the action "must materially affect the terms, conditions, or privileges of employment." *Yanowitz*, 36 Cal. 4th at 1052.

#### i. Plaintiff's 2003 complaint.

Plaintiff states that Defendant engaged in a "series of retaliatory actions" beginning "immediately after" Plaintiff filed his 2003 DFEH complaint. (ECF No. 71 at 18.) It is difficult

12

to know to which actions Plaintiff refers. As discussed above, Plaintiff waived all claims for events related to his employment with Defendant through April 30, 2008 in the Settlement. Plaintiff describes the incident or incidents to which he refers as beginning "immediately" after he filed his 2003 DFEH complaint. (ECF No. 71 at 18.) Any actions taking place after April 30, 2008, could not reasonably be described as having taken place "immediately" after Plaintiff filed his complaint about five years earlier. *See Black's Law Dictionary* 764 (8th ed. 2004) (defining "immediate" as "[o]ccurring without delay; instant"). Plaintiff has not shown he suffered an adverse employment action in retaliation for his 2003 complaint.

          *ii.  Plaintiff's 2011 complaints.*

Plaintiff argues "a reasonable inference can be drawn from Defendant's refusal to accommodate Plaintiff's disability was in retaliation for filing discrimination complaint." [sic] (ECF No. 71 at 14.) Plaintiff claims that the adverse employment action he suffered was Defendant's failure to reasonably accommodate his mental disability, and that Defendant engaged in this action in retaliation for Plaintiff filing his 2011 complaints. (ECF No. 71 at 14.) Plaintiff's claim fails because Defendant was not required to accommodate him as he does not have a recognized disability.

"FEHA requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015) (citing CAL. GOV. CODE, § 12940, subd. (m)). "The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." *Nealy*, 234 Cal. App. 4th at 373 (citing *Wilson v. County of Orange* 169 Cal. App. 4th 1185, 1192 (2009)). As discussed above, Plaintiff does not have a FEHA-recognized disability and so cannot meet the first element of showing that he suffered a disability.

Plaintiff cannot show Defendant failed to reasonably accommodate his mental disability because he does not have a FEHA-recognized mental disability and he was accommodated with

multiple job offers, including the one he ultimately accepted. There is no genuine issue of material fact as to Plaintiff's retaliation claims under Title VII and FEHA.

Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claims under Title VII and FEHA is GRANTED.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 69) is GRANTED. The Clerk of Court shall enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

Dated: August 17, 2017

Troy L. Nunley
United States District Judge